## No. 36,103

THE STATE OF KANSAS, *Appellee,* v. ORAN GRANGER, *Appellant.*

(148 P. 2d 514)

Opinion filed May 6, 1944.

*T. R. Evans,* of Chanute, was on the briefs for the appellant.

*A. B. Mitchell,* attorney general, *William P. Timmerman,* assistant attorney general, and *Robert N. Allen,* county attorney, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: In this action the defendant was convicted of a violation of G. S. 1935, 21-1909. He appeals.

G. S. 1935, 21-1909, provides that a larceny committed in any railway depot, station house, telegraph office, passenger coach, express or freight car, or any caboose on any railway in this state,

may be punished by confinement and hard labor not exceeding seven years.

The larceny in this case was of a can of Fortnite oil from what is sometimes described in the record as a tool car. The circumstances concerning the commission of the offense were that the railway company had an extra gang employed near Thayer. On the siding at that town there was a string of railroad cars consisting of bunk cars, commissary cars, water cars and the car that is referred to in this testimony as a tool car. About the 16th of August, 1943, the defendant and some others were employed with this extra gang. Ordinarily the defendant slept in one of the bunk cars. A witness for the state testified that he heard a noise early in the morning of that day; that the car in which he was sleeping was just south of the tool car; that he looked out and saw one man, the defendant, on the ground by the tool car and someone inside handing some cans down to the other. A little later that morning the witness reported that occurrence to the night watchman of the city of Thayer. That officer arrested defendant in an automobile in company with a woman and one other man. This officer testified that just before he arrested these people he looked into what he called the turtle shell of the car and saw some cans which he recognized to be cans of oil. He was able to do this as the car drove past him because the can of oil was so big that it would not permit the top of the turtle shell to shut clear down. Upon this general evidence the defendant was convicted of larceny from a freight car and found not guilty of burglary from a freight car.

The first point argued by the defendant is that the evidence did not disclose that the larceny was from a freight car. In connection with this he also argues that the court did not properly define "freight car" in the instructions. The court instructed the jury that the term "freight car" meant just what it said. It means a "freight car." "A freight car is a railroad car for the transportation of freight." There might be some question as to whether or not this instruction was not more favorable to the defendant than he was entitled to. However, under the evidence it was certainly as fair as he was entitled to. A witness for the state testified that it was a regular boxcar that they used for a tool car and there seems to have been no question about that. The car was certainly used for the transportation of freight unless the work train, as it is called, was going to remain permanently at Thayer. It is a fair assumption

that when it did move the tools that were in it would be carried with
it. The statute in question was passed with the intention of afford-
ing the railroad companies extra protection for their property be-
cause it is scattered over such a wide territory and quite often is not
under surveillance. We see no question at all in this case as to
whether this was a freight car as described in the statute. Certainly
there is ample evidence to warrant the matter being submitted to
the jury.

The defendant next argues that the court erred in instructing the
jury as follows—

"Some evidence has been introduced tending to show that after the time
that it is claimed the property of the Atchison, Topeka & Santa Fe Railway
Company, a corporation, was stolen, it was found in the possession of the de-
fendant, Oran Granger. You are instructed upon this branch of the case that
the unexplained possession of stolen property shortly after the same is stolen
is prima facie evidence that the possessor is the thief. In this case, it is for
the jury to say from all the testimony: First, whether the personal property
described in the information was stolen; second, if it was stolen, was it found
in the possession of the defendant recently thereafter; third, if it was so found,
is it now explained, or unexplained, by the defendant."

Defendant argues there was no evidence to warrant the giving of
this instruction. His argument is that the state never did prove
that the defendant was in exclusive possession of the can of oil and
that exclusive possession was necessary to warrant the giving of the
instruction. This is not quite a correct statement of the matter.
There was some evidence that the people in whose possession the
property was found along with defendant might have been guilty of
counseling, aiding and abetting in the commission of the larceny.
In fact, the record discloses that the woman was tried on that theory
and acquitted. In any event, there was evidence that the can of oil
found in the automobile in which the defendant was riding was
handed to him from the tool car earlier that morning. The fact that
several people might be implicated in the larceny would not prevent
possession of stolen property from being admissible against which-
ever one of them happened to be on trial. We find nothing wrong
with this instruction.

The defendant next argues that the defendant was guilty of petty
larceny if anything. He points out that the can of oil stolen was
worth about $1.35. The question of whether larceny in a freight
car should be a graver offense than larceny under other circum-
stances is one of policy with which the legislature should deal. It

apparently did deal with it in the enactment of G. S. 1935, 21-1909.

We find no error in this record and the judgment of the trial court is affirmed.

WEDELL, J., not participating.